# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MARY LOUISE OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:13-0006** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed.  Docket No. 25.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff completed her applications for DIB and SSI on October 5, 2009, alleging that

1

she had been disabled since August 31, 2008 and October 1, 2008, respectively,[1] due to "back problems." Docket No. 11, Attachment ("TR"), TR 124, 131, 146. Plaintiff's applications were denied both initially (TR 62, 63) and upon reconsideration (TR 64, 65). Plaintiff subsequently requested (TR 82) and received (TR 91) a hearing. Plaintiff's hearing was conducted on June 17, 2011, by Administrative Law Judge ("ALJ") Frank Letchworth. TR 36. Plaintiff and Vocational Expert ("VE"), Ernest Brewer, appeared and testified. *Id.*

On July 28, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 19-31. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; arthritis; bone spurs of feet bilaterally; depressive disorder; anxiety disorder; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should have the option to sit or stand at her discretion.

_____

[1] At her hearing, Plaintiff amended her onset date to be July 31, 2010. TR 38-39.

In addition, she would be limited to occasional postural activities; occasional use of lower extremities for pushing, pulling, and operation of foot controls; and she has the ability of performing 1 to 3 step tasks.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 7, 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 24-30.

On September 6, 2011, Plaintiff timely filed a request for review of the hearing decision. TR 18. On November 29, 2012, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe"
impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it
must be determined whether he or she suffers from one of the
"listed" impairments[2] or its equivalent. If a listing is met or
equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level
impairments, it must be determined whether the claimant can
return to the job he or she previously held in light of his or her
residual functional capacity (e.g., what the claimant can still do
despite his or her limitations). By showing a medical condition
that prevents him or her from returning to such past relevant work,
the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability,
the burden shifts to the Commissioner to establish the claimant's
ability to work by proving the existence of a significant number of
jobs in the national economy which the claimant could perform,
given his or her age, experience, education, and residual functional
capacity.

20 CFR §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181

(6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[2] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

6

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in his evaluation of: (1) Plaintiff's subjective complaints, and (2) the examination of Dr. Melvin Blevins and Mr. Mark Loftis. Docket No. 16 at 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171,

176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Subjective Complaints

Plaintiff contends that the ALJ "erred as a matter of law in evaluating" her subjective complaints. Docket No. 16 at 15. Specifically, Plaintiff contends that the ALJ made a conclusory credibility finding and failed to apply the appropriate regulatory factors. *Id.* Plaintiff argues that her statements, both at her hearing and when seeking medical treatment, are consistent with her reports of pain and depression. *Id.* at 16. Plaintiff also asserts that the objective findings of her doctors likewise support her complaints of pain and her credibility, as does the report of consultative examiner Mr. Mark Loftis, who found no evidence of malingering. *Id.* at 18-19, *citing* 475-76.

Defendant responds that the ALJ properly determined that Plaintiff "was only partially credible." Docket No. 25 at 12. Specifically, Defendant notes the ALJ's discussion of: (1) the inconsistencies between Plaintiff's complaints of anxiety and depression and her treatment history, including her "sporadic pursuit of mental health treatment"; (2) Plaintiff's misrepresentations of her medical history to her doctors in November 2010; (3) inconsistencies between Plaintiff's alleged disability and inability to perform various self-care activities and her attempt to seek custody of her nephew's then 7 year-old daughter; and (4) Plaintiff's non-compliance with her medication contract. *Id.* at 12-14. Defendant further argues that Plaintiff's argument that "the mere consistency of her ongoing reports proves that her ongoing reports were credible" is "unpersuasive because her logic is circular." *Id.* at 14. Additionally, Defendant asserts that the ALJ properly discounted the opinion of Mr. Loftis since Mr. Loftis had examined Plaintiff only once and did not have a comprehensive picture of Plaintiff's medical history. *Id.*

Defendant therefore argues that "[t]he fact that he found no evidence of malingering does not trump the ALJ's finding based on specific articulated rationale and the record as a whole." *Id.* Finally, Defendant characterizes Plaintiff's argument as "asking this Court to impermissibly reweigh evidence, instead of demonstrating how the ALJ's rationale is not support by substantial evidence." *Id.* at 15.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. TR 27. In making this finding, the ALJ discussed Plaintiff's testimony regarding her subjective complaints and daily activities as follows:

> The claimant lives with her 17-year-old son, friend Bridgette, Bridgette's daughter, and Allison Henry whom she is seeking custody of. The claimant testified she does not do any housework, that Bridgette does the household chores and laundry. There is not a Function Report or Activities of Daily Living of record. However, the activities of daily living reported to the consultative examiner revealed the claimant is able to care for her personal needs, does light household chores, budgets, watches television, and prepares simple meals.

TR 25 (internal citation omitted).

The ALJ also discussed Plaintiff's medical records in detail. TR 26-27. Specifically, the ALJ stated as follows:

The medical evidence indicates treatment history for bilateral foot pain and back pain. The x-rays of the thoracic spine indicated only mild degenerative changes; the lumbar spine and pelvis reported no abnormalities. A MRI scan of the lumbar spine reported no disc hernation [*sic*], no spinal stenosis, and no nerve root compression. Although the claimant has received treatment for back pain, that treatment has been conservative in nature with medication management. She has never been referred to a back specialist despite having TennCare. Additionally, treatment notes indicate that, after a warning for a completely negative drug screen, she was discharged from her treating physician, Dr. B.G. Smith, after a prescription discrepancy and another failed urine drug screen in February 2011.

The x-rays of record revealed heel spurs of the feet with no other bone or joint abnormalities. The medical evidence of record indicates Dr. Williams performed a successful right foot surgery for heel spurs n May 2011. Treatment notes indicate the claimant was instructed to wear a post-op shoe for 4 to 6 weeks, and Dr. Williams opined the surgical wound(s) should heal in 6 months. Additional pain medications were prescribed.

TR 26-27 (internal citations omitted).

The ALJ additionally discussed Plaintiff's mental health treatment as follows:

As far as mental health treatment is concerned, the evidence indicates weak and sporadic pursuit of professional health treatment and only after the instant application for disability benefits. Moreover, the evidence appears she was not fully truthful to Plateau Mental Health Care at the intake in November 2010 that she had "taken Xanax in 1989 to 1990 after her mother's death". Actually, the evidence reveals Dr. B.G. Smith was prescribing Xanax until her discharge in February 2011. Office notes of March 2011 indicate the claimant reported needing a prescription because she was changing providers and would run out of Xanax. On May 23, 2011, the claimant reported improvement and well managed pain control on current medications with no side effects. She felt medications were currently on track and doing well, and her sleep and appetite were fine. Treatment notes of Plateau Mental Health Care reported her anxiety was due to custody issues. Apparently, the claimant had been trying to get custody of her nephew's daughter, Allison Henry, who lived with her, and she had to have her nephew arrested for domestic charges. One would not expect

> for a fully disabled person, who already has custody of her 17 year
> old, to ask for custody of another younger child.

TR 27 (internal citations omitted).

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, indicating that these factors were considered. TR 25-28. It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective and testimonial medical evidence, the ALJ ultimately determined:

> . . . the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional capacity
> assessment.

TR 27.

The ALJ explained:

> As noted previously, the claimant received a warning from prior
> physician Dr. Smith regarding a negative urine drug screen,
> suggestive of at least non-compliance with prescribed therapy.
> Notwithstanding such warning, the claimant again showed at least
> non-compliance, resulting in her discharge from treatment.
> Claimants are required to comply with prescribed therapy if such
> therapy can reasonably be expected to improve function (20 CFR
> 404.1530 and 416.930). The claimant's non-compliance from pain
> management administered by Dr. Smith does little to enhance her
> credibility herein.
>
> The claimant has given misleading history to treatment providers
> such as Plateau Mental Health, especially regarding the matter of
> previous use of prescription (and habit-forming) Xanax. One can
> reasonably question her motive for such misleading/inaccurate
> history, especially when such is coupled with her discharge from
> treatment that involved use of other habit-forming medication.
>
> . . .
>
> In sum, the above residual functional capacity assessment is
> supported by medical signs and findings and is consistent with the
> other medical evidence of record as a whole. Neither the objective
> medical evidence, nor the testimony of the claimant, establishes
> that the claimant's ability to function has been so severely
> impaired as to preclude all types of work activity. Ultimately, the
> evidence falls well short of corroborating any fully debilitating
> impairment or combination thereof.

TR 27-29 (internal citation omitted).

The ALJ also noted:

> . . . One would not expect for a fully disabled person, who already
> has custody of her 17 year old, to aks for custody of another
> younger child.

TR 27.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached

a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision

not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Weight Accorded to Opinions of Dr. Blevins and Mr. Loftis

Plaintiff maintains that the ALJ "failed to properly evaluate" the examinations of Mr.

Mark Loftis and Dr. Melvin Blevins. Docket No. 16 at 19. Specifically, Plaintiff argues that Dr.

Blevins' May 2011 consultative exam is consistent with the evidence of record, and particularly

with the treatments and findings of Drs. Smith and Williams, such that the ALJ "erred in

rejecting it." *Id.* at 19-21. Plaintiff also contends that the ALJ did not "adequately address" Mr.

Loftis' August 2010 limitation findings or "give sufficient reason" for their rejection. *Id.* at 21-

22.

Defendant responds that the ALJ "properly evaluated" Dr. Blevins's opinion because:

(1) that opinion was provided three days before Plaintiff's right foot surgery; (2) Dr. Blevins

examined Plaintiff only once and there was a "significant evidentiary discrepancy" between his

examination and other evidence in the record; and (3) Dr. Blevins examined Plaintiff in

connection with her attorney's referral. Docket No. 25 at 18-19. Defendant also contends that

the ALJ "properly gave little weight" to the opinion of Mr. Loftis because: (1) Mr. Loftis's

opinion was inconsistent with the entirety of the evidence of record, as well as Plaintiff's hearing

testimony; (2) Mr. Loftis examined Plaintiff only once, without access to her full medical

history, instead relying on "Plaintiff's own subjective statements," which the ALJ found to be less than fully credible; and (3) there were inaccuracies in the report. *Id.* at 15-17. Defendant additionally notes that the ALJ had already accounted for the limitations stated in Mr. Loftis's report. *Id.* at 17-18.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that

opinion.

> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 CFR § 416.927(d) (emphasis added). *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

With regard to Dr. Blevins' Medical Source Statement at issue, Dr. Blevins opined that Plaintiff could occasionally lift and/or carry up to 10 pounds and frequently lift and/or carry less than 10 pounds; stand and/or walk for less than 2 hours in an 8-hour workday; and sit for about 4 hours in an 8-hour workday. TR 728. Dr. Blevins further opined that Plaintiff's ability to push and/or pull was affected in her lower extremities; she frequently experienced pain severe enough to interfere with attention and concentration; she was incapable of even "low stress jobs"; she would sometimes need to take unscheduled breaks during an 8-hour working day; her impairments were likely to produce "good days" and "bad days"; Plaintiff's impairments would likely cause her to be absent from work more than four times per month. TR 729. Dr. Blevins found no postural, manipulative, or visual/communicative limitations, except that her vision was limited. TR 730. Dr. Blevins opined that Plaintiff should avoid even moderate exposure to all environmentally hazardous situations, such as extreme cold, extreme heat, etc. TR 731.

Dr. Blevins further noted that Plaintiff used a rolling walker and had a noticeable limp, decreased weight bearing right lower extremity, and short stride, and he scheduled heel surgery for Plaintiff. TR 732.  Upon examination, Dr. Blevins found significant decreased visual acuity, significant obesity, decreased hearing acuity, dyspnea on exertion, shortness of breath, cough, depression, and anxiety. TR 726. Dr. Blevins noted that Plaintiff was alert and cooperative, but with some depressed affect. TR 727.

Regarding the findings of his examination of Plaintiff's motor and sensory systems, Dr.

Blevins found paralumbar and parathoracic spine tenderness; straight leg raise was positive on the right at 10 degrees, and on the left at 45 degrees; deep tendon reflexes were 3/4 on the right and left; "exquisite tenderness" for both feet, as typical of heel spur pain; some Heberden's nodes; grip strength was a 4/4 on both sides, but pinch strength was a 3/4 on both sides; and significantly impaired gait. *Id.* With regard to Plaintiff's gastrointestinal systems, Dr. Blevins observed that the abdomen was obese, and bowel sounds were active. *Id.* With respect to Plaintiff's respiratory systems, Dr. Blevins noted that breath sounds were decreased but clear. *Id.* Regarding Plaintiff's cardiovascular system, Dr. Blevins noted that the heart showed normal sinus rhythm with rare APC. *Id.*

The ALJ accorded little weight to the findings and opinions of Dr. Blevins. TR 29. Specifically, the ALJ stated that:

> The undersigned has considered the opinion of consultative examining physician, Melvin L. Blevins, MD who provided a physical residual functional capacity assessment dated May 16, 2011. (Exhibit 16F) The undersigned does not find Dr. Blevins' determinations credible with regard to the claimant's ability to do work related activities. His conclusion that the claimant is limited to lifting or carrying 10 pounds occasionally, and less than 10 pounds frequently; stand or walk less than 2 hours in an 8-hour workday; sit 4 hours in an 8-hour workday; she would be incapable of even "low stress jobs"; never climb, balance, kneel, crouch, or crawl; with no manipulative limitations in reaching in all directions, handling, fingering, or feeling. While it is noted Dr. Blevins indicated the claimant was using a rolling walker and had a notable limp, this assessment was 3 days prior to her scheduled right foot surgery for heel spurs. It is further emphasized that the claimant underwent this assessment that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

> Moreover, the undersigned affords little weight to this physician's report and conclusions because he was not a treating physician and examined the claimant on only one occasion.

TR 28-29, *citing* 725-33.

As the ALJ correctly observed, Dr. Blevins was a consultative examiner, not a treating physician. *Id.* The opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician. *Barker v. Shalala*, 40 F. 3d 789, 794 (6th Cir. 1994). Nevertheless, the ALJ must consider all opinion evidence, as well as the objective and testimonial evidence of record. *See, e.g.,* 20 CFR § 416.927(d); § 404.1527(d). The ALJ in the case at bar has done just that. As discussed in the statement of error above, the ALJ discussed the objective and testimonial evidence of record, much of which contradicts Dr. Blevins' findings and opinions. When opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

The ALJ properly discussed the medical and testimonial evidence of record, reached a reasoned decision that was supported by substantial evidence, and articulated the basis for that decision. The Regulations simply do not mandate that the ALJ accord Dr. Blevins' evaluation greater weight. Accordingly, Plaintiff's argument regarding the opinion of Dr. Blevins fails.

In Mr. Loftis' August 16, 2010 psychological evaluation at issue, Mr. Loftis opined that Plaintiff had a "mild impairment to understand and recall instructions," and noted that "Simple, repetitive tasks are not likely to be significantly impaired." TR 476. Mr. Loftis further opined that Plaintiff had a "mild to moderate impairment in concentration skills, persistence and ability to maintain a competitive pace." TR 477. Mr. Loftis noted that Plaintiff "apparently has

problems with social interactions," and stated,"It is believed that she is moderately impaired in social interaction skills necessary to deal with coworkers and supervisors." *Id.* Additionally, Mr. Loftis opined that Plaintiff "is moderately limited in her ability to adapt to changes found in most work situations." *Id.* Regarding his diagnostic impressions, Mr. Loftis stated as follows:

> The claimant denied currently receiving counseling and psychiatric services. Her doctor was treating her for anxiety. She is taking Xanax at times. She felt like the medication does help. She denied hallucinations. She denied suicidal and homicidal thoughts. She questions why she is here, but denied suicidal thoughts. She has crying spells daily. She feels anxious very often. She feels overwhelmed all the time and retreats to her room. She also does not sleep well. She reported problems with constant pain. She does not like to be around a crowd. She is self-conscious about her weight and feels like people stare at her because of the way she limps when she walks. She gets very down at times. She feels depressed at times. She feels depressed because she cannot do anything. She worries a lot about her son's future since she cannot work and support him. She denied any abuse of alcohol or drugs.
>
> She was asked to rate the severity of her anxiety symptoms on a ten-point scale and she rated her both [*sic*] set of symptoms as 7 or 8 out of 10. She rated her depressive symptom severity as 7 out of 10.

TR 476.

Additionally, when evaluating Plaintiff's mental status, Mr. Loftis observed:

> On the day of the evaluation, the claimant was oriented in all spheres. She could recall her social security number. There was no evidence of psychosis or delusional thinking. There was no suicidal or homicidal ideations [*sic*] noted. Her thought content and processes were logical and coherent. She did put forth good effort during the course of the evaluation. She appeared to be a reliable personal historian. Although no formal evaluation of intelligence was requested, she appears to be in the low average range of intellectual functioning. There was no evidence of malingering. She gave appropriate responses to simple questions such as the shape of a ball and the colors of the American flag. She could relate current news events about a child being left in a hot

car. She answered correctly simple arithmetic problems. She could do serial threes backwards three times correctly. The claimant was unsuccessful in spelling the word, "world" backwards. She reports if she was walking on the street and found a sealed, stamped, addressed envelope she would "put it in a mailbox." She interpreted the proverb regarding the spilled milk, as "ain't no reason in crying." She reported that an apple and a grape are similar in that they are round. She reported that a dog and a lion are alike in that they are tough. She was given three words to repeat and recall and she could recall one of the three words after a five-minute interval. She did not know the name of the current president. She knew her mother's maiden name. Her mood and affect were normal.

TR 475-76.

With regard to Mr. Loftis' findings and conclusions, the ALJ stated:

A consultative exam was performed by Mark Loftis, MA, LSPE, which indicates the claimant reported the longest period of employment was as a private sitter for an elderly woman for about 6 years. She had also done other private sitting in the past. This is inconsistent with the claimant's testimony at the hearing. Mr. Loftis reported the claimant was oriented in all spheres, could recall her social security number, her mood and affect were normal, and there was no evidence of psychosis or delusional thinking. Diagnosis was anxiety disorder, NOS and depressive disorder, NOS. Mr. Loftis opined she was only mildly limited in understanding and remember [*sic*], with simple, repetitive tasks; mildly to moderately limited in concentration, persistence and pace; moderately limited in social interaction; and moderately limited in ability to adapt to changes; and could handle her finances in an appropriate manner. The undersigned has considered, and finds the opinion of Mr. Loftis somewhat restrictive. Further, Mr. Loftis did not have the benefit of reviewing the other medical reports contained in the current record. Accordingly, the undersigned does not find the conclusions of Mr. Loftis consistent with the medical signs, findings, and other medical evidence of record as a whole.

TR 28.

Like Dr. Blevins, Mr. Loftis is also a consultative examiner, not a treating physician. As

discussed above, the opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician, but must nonetheless be considered.  *See Barker*, 40 F. 3d at 794; 20 CFR § 416.927(d); § 404.1527(d).  The ALJ's decision demonstrates that he considered Mr. Loftis' opinion, but determined that Mr. Loftis' opinion was not based on the record as a whole and contradicted other substantial evidence in the record, including the opinion evidence of State agency consultations, which the ALJ discussed as follows:

> As for the opinion evidence, the residual functional capacity conclusions reached by the Disability Determination Services medical and psychological consultants also support a finding of "not disabled." Specifically, the claimant would have the ability to remember and carry out 1 to 3 step tasks; maintain concentration, persistence, and pace for periods of 2 hours at a time; with no limitations in social interaction with others; and having ability to adapt to routine changes in the work environment. As experts in the Social Security disability programs, State agency consultants are uniquely qualified to articulate findings of fact about the nature and severity of a claimant's impairments. The assessments of these consultants are based on a review of the complete case record, which provides more detailed and comprehensive information than what is available to other sources of record. Accordingly, as reflected in the residual functional capacity assigned here, the undersigned has accorded great weight to the opinions of the State agency consultants in so far as they are clearly supported by the record as a whole. (SSR 96-6p)

TR 28.

As noted, when opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).  Because Mr. Loftis' was a consultative examiner whose opinions were not based upon the evidence as a whole and contradicted other evidence in the record, the ALJ was not bound to accept them.  As discussed above, the ALJ properly discussed the medical and testimonial evidence of record, reached a reasoned decision that was supported by substantial

evidence, and articulated the basis for that decision.  Accordingly, Plaintiff's argument regarding the opinions expressed by Mr. Loftis fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judges

23